When you're ready, Counsel. Thank you, Your Honor. I'd like to reserve two minutes. Okay. Counts down, so keep your eye on the clock. Thank you. My name is Peter Kwan. I represent the appellant in this case. I'm here to ask this court to reverse the district court's judgment of finding that the state court unreasonably applied federal law to the case. The basis of the appeal forms around the application of the Ash v. Swenson case dealing with collateral estoppel. Also, as this court has read in my briefing, the Dowling case comes into play as well, and ultimately Harrington v. Richter. The point is that the appellant, I'm sorry, Mr. Wilkinson's brief, replacement answering brief, misconstrues the record in the sense that Mr. Wilkinson interprets the docket of the traffic court in this case as the traffic court judge's determination and or a finding of fact, when in fact that cannot be done. The position of the appellant has always been that the issue of ultimate fact that was presented in Mr. Wilkinson's perjury trial was in fact resolved in his favor. Well, you would agree, wouldn't you, that his identity was an issue in the traffic court trial? Certainly, Your Honor. And it was an issue in the perjury trial, correct? No, Your Honor. It wasn't? No, Your Honor. I'm sorry, I respectfully disagree. In the perjury trial, it was a matter of whether he's told the truth. Right, and the question is what's the truth? So the truth is an element. Therefore, the question is, was he or wasn't he driving that day? Because if he was, wasn't driving that day, then what he said was the truth. And if he was driving that day, then what he said was false. And he can't be convicted of perjury unless it was false. So it is a direct element of the perjury issue. Yes? I would admit it is an element. Okay. But it is not the exclusive element that was presented. I thought you answered Judge Pius saying it was not an element. I'm sorry? I thought your answer to Judge Pius was that it was not an element. If I did, if I gave that impression... Well, they said it was not a material issue. I'm sorry? A material issue. It's a material issue, yes. It was a material issue, wasn't it? But is it the exclusive issue that was decided? But that's not under Ashe, the question, is it? I mean, Ashe is very specific about it. You have to practically look at what was actually decided. And we know what was actually decided because we know what was contested. The point with Ashe, Your Honor, is that the ultimate issue, which was refined letter undoweling, the ultimate issue that was in the second trial had to have been the issue that was resolved in the first trial. And we do not have a record. Now why do you say the issue? Because collateral estoppel will apply to issues that are resolved. And if two issues are resolved, I don't see why collateral estoppel does not apply to both issues. The issue in the perjury trial was whether or not he told the truth under sworn testimony. At the trial, at the traffic trial, there were multiple issues, including the issue of whether or not the people had proven their case beyond a reasonable doubt. The record of the traffic court does not give this court or the district court any inkling of what that traffic judge found to be the determinative factor. It certainly gives an inkling because the docket says what was actually contested. You're saying that wasn't dispositive, but we certainly have an inkling. Well, we have, as far as the docket goes, Your Honor, that is at supplemental excerpts of record 598. And as I pointed out in appellant's replacement reply brief, under California law, which I believe is 1207, the person responsible for creating that court document is not the judge. It is the clerk. I understand that, but you said we have no inkling. We have a pretty good inkling. Okay, let me be more specific. The state court of appeal had, that the district court had, that this court is seeing in the supplemental excerpt of records, is not the traffic judge's verdict or finding of fact. It is a recording. We know that the docket does reflect that the judge found him not guilty, correct? Correct. You don't dispute that, right? In other words, what happens in the traffic court is the state fails to prove beyond a reasonable doubt that he was driving the car. Correct. He testified that he was not driving the car. Correct. Therefore, the state failed to prove beyond a reasonable doubt that he was lying. That I would respectfully disagree. Well, what other conclusion can I draw? Because when the officer who issued the citation to Mr. Wilkinson testified, and the court asked the officer, is this the man who you ticketed? The officer said, I don't know. He hesitated. He said, I'm 98% sure. Now, there is nothing in the record where we can discern what the traffic court judge, how that traffic court judge interpreted the officer's statement of 98% sure. Did the traffic court judge want 100% sure as beyond a reasonable doubt? We don't know. And so the point has always been that the docket is a recording by the clerk of events that occurred. They are neutral facts that occurred in that. They are not the judge's finding that he found that that... Well, it provides some information about what happened at that traffic trial. The point that I would like to make, Your Honor, is that the docket does not point to the fact that the traffic judge would, made his ruling, finding that Mr. Wilkinson told the truth in that proceeding. Well, we do know, though, it looks like, you know, they have certain, what do you call them, codes that they use. Codes in the docket, Your Honor? Yeah, and the clerks, the clerks in the courtroom are sitting there watching everything going on, listening to what the judge has to say, and they record what happened. So we know, we know at least, I mean, as Judge Brezon said, we know we have a fair, Judge Fletcher also said, we have a fairly good inkling about what took place at that, what the in Ash and in Dowling and in some of the other cases by this own court, the issue is whether or not the traffic judge found that Mr. Wilkinson told the truth in that traffic trial. Well, but we flip back and forth, and I understand why we do it, because of the burden of proof issue. We don't, the issue is never, has he proven that he's told the truth? The issue is always, has the state proved beyond a reasonable doubt that he was the guy in the car? Correct. Not that he was or wasn't, has the state proved beyond a reasonable doubt that he was? So, at the traffic court, has the state proved beyond a reasonable doubt that he was in the car as the driver, and he gets an acquittal? He testified in trial that he was not the driver in the car. Well, it seems to me that the conclusion of the traffic court is the state has failed to prove beyond a reasonable doubt that he was a liar. And that is short of the traffic court making a finding that Mr. Wilkinson told the truth in the traffic trial. Well, but that, let me say that, that's my point. They don't have to prove that he was telling the truth. All we need is, because it's the same thing. The issue in the perjury trial is, has the state or can the state prove beyond a reasonable doubt that he was a liar? That precise question was in front of the traffic court. Beyond a reasonable doubt, was he lying about whether he was in the car? We're not establishing the truth of what he said. We're establishing whether or not the state has previously been able to show beyond a reasonable doubt that he was lying. The logical extension of what Your Honor is suggesting is that in any case where a defendant testifies and he happens to be acquitted, then that, regardless of whether that defendant lied or did not lie in that prior hearing, that defendant then would be immune. That does not, that does not follow because the only issue in the traffic court was whether or not he was the driver. There was no other issue in that case. It was whether or not, I respectfully submit that the issue of the traffic court was whether or not the people proved beyond a reasonable doubt that, that he was driving the car. Correct. And that was the only issue. There were two witnesses, the officer and Mr. Wilkinson. I see my time is up. And that, I was going to say, and I was slightly differing from Judge Fletcher in this instance, that the issue that was decided wasn't whether he was credible, the issue was decided was whether he was driving the car. In the, both in the traffic case and in the perjury case. Right? Or not? Not as much in the perjury case. Why? The issue there was... If he wasn't driving, because the truth of whether he was driving the car or not, in an abstract sense, aside from who's credible or isn't credible, was an issue in the perjury case and was an issue in the traffic case. In the abstract sense, correct. Right. So the, so you're trying to switch, and the California Court of Appeals switched the question to his credibility, but that's not the question. The question was, that was, that the issue that was overlapping the two cases was, was he driving the car? And that is exactly the same in the two. No? I would disagree, because we have several cases, this Court's cases included, which look at general verdicts, which was what occurred in this case, of not guilty. And the interpretation that this Court and other courts, including the United States Supreme Court, has said of general verdicts is that it means only that the people had improved their case beyond a reasonable doubt. So you're saying maybe what he found was he wasn't going, however, he was driving the car, but he wasn't going a hundred miles an hour. Is that what you're saying? That was a issue, that was... It wasn't an issue. That was an element at the... It was an element, but it wasn't, nobody ever contested it. I'm sorry? It was an issue, but nobody ever contested it. I mean, in Ashe, for example, in Ashe, they could have found that the robber happened. Correct. But the Court was quite clear about the fact that the only thing that was really contested was, was he one of the robbers, and they took that to be the issue that was decided. They didn't go into the sky and say, well, you know, maybe they decided that there was never really a robbery. They didn't do that. My time is up, may I answer? Yes, please. Yes. The difference between Ashe and this case is that in Ashe, we look at the very latter part of that decision and we see that there was no difference of evidence presented in the first trial in Ashe versus what was presented in the second trial. But that's not responsive to the point you're making now. The point you're making now is that there are several ways that this general verdict could have been reached, and that was true in Ashe. That was not what was highlighted by the High Court in Ashe. That's correct, because they said, they recognized it, but they said, we're doing a practical look at this, what really was decided. And the High Court characterized the Ashe decision, number two, as a dry run. They did. Whereas in this case, this court, I'm sorry, the perjury trial had not only the testimony of the officer and Mr. Wilkinson, but also new evidence which proved his perjury. And that also has to be... That's not an exception to the double jeopardy. I'm because you now have new evidence that he really did it. Let's suppose he didn't testify at all, okay? Correct. No testimony, so you couldn't prosecute him for perjury. You couldn't retry him for murder because you now found the smoking gun. If he did not testify at all? Right. In the first trial? Right. Then we wouldn't be, then the people would not be prosecuting him for perjury in the second trial. Well, they wouldn't be prosecuting him for anything, even if you had entirely new evidence, which now proves that he actually did it. But that's not what happened here. I understand, but that's why new evidence just seems irrelevant to the double jeopardy question. I see what you're saying. I would respectfully disagree. I think new evidence makes a lot of difference because jurists across the country, as I pointed out in my supplemental reply brief, have noted that the distinguishing feature between the second trial perjury trial and the first trial oftentimes rests with the fact that... That's very true, but they haven't really coped with the problem that the double jeopardy protection does not concern itself with whether you've gotten some new evidence. I can only respectfully disagree. Okay. Why don't we hear from the state? We've taken you over time, but we will give you a chance to respond. Thank you. Good morning, Your Honors. May it please the Court, Deputy Federal Public Defender Elizabeth Dahlstrom on behalf of Appellee James Wilkinson. Your Honors, I'd like to address the main issue that was discussed during the state's argument, which was what was actually decided at the traffic court trial. Now, Mr. Wilkinson has always asserted that there were two things. First, that he was not the driver. That's what the district court called the identity issue. And he's also asserted that the traffic court trial showed that he was truthful. That's what the district court called the veracity issue. But this case can be resolved by reference to the first one alone, which is what the district court did, and it did so correctly. It is true that in the traffic court trial, Mr. Wilkinson was found not to be the driver. And it is also true that in the perjury trial, that same issue was material to the conviction for perjury. He could not have been found guilty of perjury. And your basis for saying that that's what was decided in the first trial, is the docket sheet or is the testimony in the perjury trial or what? It's the entire record, including, as Your Honor pointed out in the previous argument, the fact that the speed limit, for example, was not an issue. Both Mr. Wilkinson and Officer McGran testified at the perjury trial that the only question of the traffic trial was whether or not he was the driver. I'd like to also address the state's response about the docket form. Now, I raise this as an alternative argument under 2254 D2, in essence, that the state court failed to consider this portion of the record. Now, the state asserts that it's not a true verdict. The state court, you know, wrote an interesting opinion, but it really took a different view of, it didn't really cope with the fact, as I see it, that who drove, that the really overlapping issue was who drove the car, not whether he was telling the truth. And so it got deflected onto the second question and said, well, you know, they could have found, they could have found, the traffic court could have gone off solely on the officer's testimony without looking at whether he was telling the truth, which is true, but it doesn't matter. So, in other words, the state court really wasn't addressing what we're talking about now. It was addressing a different question. That's correct. They viewed it solely through the lens of veracity alone. And in doing so, they failed to consider this portion of the record, even if it's not considered to be a true finding of the judge or a verdict form. Ash versus Swenson tells us to look at the entire record of the proceedings, including the charges, the pleadings, and any other relevant matter. Ash does not restrict the inquiry to just the jury's verdict alone or just the judge's finding alone. And certainly it's a relevant part of the record. I'm going to make something up that didn't happen, but what if, in the traffic court, the traffic court judge at the end had said, you know, I'm not going to pay any attention to Mr. Wilkinson's testimony. The only testimony that matters to me is the testimony of the officer who gave the ticket. He's not sure. I'm done. And I don't address at all whether or not Mr. Wilkinson's telling the truth. If that had happened, Your Honor, the result would be the same. Mr. Wilkinson would still be entitled to relief because it goes again to the identity issue. If there was a finding that he was not the driver or that the state simply failed to meet its burden of proof on that issue, the state would still be collaterally stopped from relitigating it in the perjury trial. So to me, the hard question in this case is whether we can, we know that the Ninth Circuit has a fair-minded jurist standard under D-1. The state has pointed to other cases, for example, Louisiana state cases, Illinois. Well, I know. I understand that we can't, that the fact that other courts have reached it isn't the question. But the question is that they've reached it certainly gives one some pause as to whether this is clearly established Supreme Court law, doesn't it? No, Your Honor. I think it's an objective inquiry. So we don't simply look to see whether other courts have reached the opposite conclusion. And we know that from there, the Supreme Court was very clear that it's not a matter of finding another judge who's come out the other way. And even if... What about the following, though? Not so much that the Supreme Court law is unclear because I think it's actually quite clear, but the matter is analytically somewhat complex. And what if we have a somewhat difficult logic problem to which there is a clear answer, but 40 percent of the judges asked to answer the logic problem and get it wrong? Well, if the state court is one of those judges or 40 percent, they get it wrong, is it unreasonable? How do we deal with EDPA when it's a logic problem to which if you understand it perfectly and you're really sort of working logic through your philosophy major, you get it right. But if you're an ordinary judge, the chances are pretty good you're going to get it wrong. What do we do? Your Honor, I still think the inquiry is governed by the clearly established federal law of the Supreme Court. Even a fair-minded jurist who's trying to get it right can make an unreasonable decision sometimes. But what happens if... I mean, am I supposed to... You have to go with my hypothetical. 40 percent of the judges in the country are unreasonable because 40 percent, according to my hypothetical, are going to screw up on the logic problem? No, Your Honor. I think... They may be mistaken. I got that part. Yes, but they can also be actually address the substance of some of those cases, because it goes back to an issue that Judge Berzon pointed out in the state's argument, which is, does new evidence matter? Well, many of those state cases dealt with brand new evidence. The Cannon case, for example, that was cited in the government's brief, went through a four-part test governed, it seems, through a judicially created state exception to collateral estoppel, where the state had to prove the evidence was new, they couldn't have found it earlier, and the standard was clear and convincing. So that shows that some of those decisions by other judges are very uniquely tied to those circumstances, and they're not applicable in the 2254-D1 analysis to just say, well, some courts have come out the other way. I don't understand what you're saying. I thought your next sentence was going to be, and they have to be wrong because double jeopardy doesn't concern itself with whether there's new evidence, but that's not what you said. You seem to be saying, well, maybe they're right, but that doesn't apply to 2254-D1. I don't know what you're saying. I do think under clearly established federal law, new evidence doesn't matter for double jeopardy, but even if you look at the facts of those state cases, they don't apply here. Why? There was new evidence. There was new evidence, but the analysis done by the court is very different, and sometimes it's governed by state law exceptions to the double jeopardy clause. For example, I mentioned the Cannon case. It's this very complex four-part test that that specific court has created. It's not to be used as clearly established federal law here in reference to the double jeopardy issue. Well, one of the tricky things we have is that collateral estoppel or issue preclusion in the ordinary application outside the context of double jeopardy is actually a fairly complex doctrine, and it includes, for example, what were the traffic court adjudication because the incentives were low or limitations on the jurisdiction or on the evidence in the case below and so on. So just ordinary collateral estoppel law doesn't apply in a straightforward way to double jeopardy, but I don't see anything here, and here I'm making your point, I think, so you might have to respond to it if you wish. I don't see anything here about this traffic court proceeding that would give me pause. That is to say, I think the incentives to litigate were appropriate. I think that, you know, so I don't see that, but I have great trouble just applying collateral estoppel law to double jeopardy because it has a lot of other things in it. I would absolutely agree, your honor. It can be a very complex issue. Well, what did Ashe do? Did it take collateral estoppel law and make double jeopardy law, or did it have a different set of rules? Sort of like collateral estoppel, but it's different. I think collateral estoppel is a subset of double jeopardy. Collateral estoppel in the common law sense with all its complexities. Yeah, yes, your honor. Seems a little peculiar. Imported it into the criminal context. It had been a civil law context. What about, I mean, it seems to me if one were to try to come up with a reason why the perjury cases are different than Ashe, I forget which case, but one of the cases said what seemed to me to be the only telling thing, which is that the underlying crimes are completely different. I mean, in the one instance, the crime is, you know, you did this when you were driving in the car, and the other one is you were in a courtroom and you told a lie. And the question is really whether Ashe carries over. I mean, there are obviously very strong policy concerns on both sides of this question of whether perjury ought to be allowed to be a second question, and that's part of where the case law is coming from. But what about that difference? I mean, it doesn't feel like you're trying to come again for the same thing. You're trying again for something completely different. Your honor, I see my time is the last. May I answer your question? I think the answer is that collateral estoppel is a form of double jeopardy. Double jeopardy looks at whether the crimes are the same. And I would agree here that the crimes are not exactly the same. The values behind them and the reasons for their criminal offenses are entirely different. That's correct. But in collateral... Which wasn't true in Ashe. I mean, Ashe was really, you know, the same thing again. Ashe was the same crime charged again. But that wasn't the crux of the analysis. The analysis was the issue. What issues of fact had been decided? And the issue of fact that had been decided was that the defendant was not the perpetrator of the crime. And that is exactly what we have here. And it is exactly why Mr. Wilkinson's perjury trial prosecution should have been barred under Ashe v. Swenson. Thank you. Thank you, your honor. We took you over. Let's put a minute on the clock and see what happens. Minutes, fine, your honor. That's all I'll need. Thank you, your honors. The two points I'd like to make. First of all, we don't have to go out of state to find fair-minded jurors. That's the reason why I present... We've got lots of fair-minded jurors who may or may not be sitting in front of you. I was thinking about the fair-minded five jurors that wrote the dissent in the Castillo-Bassa case that I presented to the court in my briefing, your colleagues. The other point I would like to make is that the fair-minded jurors test was never used by the district court in this case. That was a test or consideration that both Richter and the earlier case of... I forgot what the other case was... required a federal reviewing court when making a decision that the state court misapplied federal law. The federal court should also consider the fair-minded jurors part. So that's the only two points I would like to make. Otherwise, I'd submit it. Okay, thank you very much. Thank you. Case of Wilkinson v. Gingrich now submitted for decision.
judges: Fletcher, Paez, Berzon